Murder, first degree; sentence: life imprisonment.
The appellant was charged with, tried and convicted of the murder of his wife. This is the second appeal of this case. It is unnecessary to restate all the facts as set out in our first opinion in Wilkinson v. State, Ala.Cr.App., 361 So.2d 400
(1978), cert. denied, Ala., 361 So.2d 405. Only so much of the facts as relate to the issues now on appeal will be restated.
 I
Appellant challenges the validity of the search of his vehicle. Appellant contends that the introduction into evidence of a revolver found during the search of his car was erroneous in that it was the product of an illegal search.
The evidence shows that, after the appellant shot his wife, he left the scene in a green 1968 Buick LaSabre automobile. He wrecked the car a shot distance away and then hitchhiked back to the scene of the shooting where he was arrested.
Gene Pilkington, a Deputy Sheriff of Tuscaloosa County, testified that he and his partner arrived at the scene of the homicide around 4:20 p.m. Approximately thirty minutes later, appellant arrived, having been given a ride back to the scene after wrecking his automobile. Appellant was arrested immediately by Pilkington, read his Miranda rights, handcuffed, and placed in the patrol car. Shortly thereafter, Pilkington and his partner transported appellant to the Tuscaloosa County Jail. On the way there, Pilkington received a radio dispatch to investigate an automobile accident at the intersection of Eastern Valley Road and Highway 5. Upon arriving at that location, James Buchanan, a witness to the accident, identified the appellant as the driver of the wrecked car. Pilkington then received orders by police radio to conduct an inventory of the car.
The search discovered a .38 caliber Iver-Johnson revolver and one spent .38 caliber *Page 398 
casing. Afterwards, on the order of Chief Deputy Miller of the Tuscaloosa County Homicide Unit, the car was towed to the homicide unit and impounded. Officer Pilkington testified that it was standard procedure to inventory any vehicle used in any crime. Although the inventory was not conducted at the police station, this does not make the products of the inventory inadmissible, Lippold v. State, Ala.Cr.App., 365 So.2d 1015
(1978), cert. denied, Ala., 365 So.2d 1022, especially in light of the fact that the impoundment procedure had begun with the inventory at the scene.
In South Dakota v. Opperman, 428 U.S. 364, 367, 368,96 S.Ct. 3092, 3096, 49 L.Ed.2d 1000 (1976), the United States Supreme Court, in discussing inventory searches, stated:
 "This Court has traditionally drawn a distinction between automobiles and homes or officers in relation to the Fourth Amendment. Although automobiles are `effects' and thus within the reach of the Fourth Amendment . . . warrantless examinations of automobiles have been upheld in circumstances in which a search of a home or office would not. . . .
 "The reason for this well-settled distinction is twofold. First, the inherent mobility of automobiles creates circumstances of such exigency that, as a practical necessity, rigorous enforcement of the warrant requirement is impossible . . . But the Court has also upheld warrantless searches where no immediate danger was presented that the car would be removed from the jurisdiction. . . .[1] Besides the element of mobility, less rigorous warrant requirements govern because the expectation of privacy with respect to one's automobile is significantly less than that relating to one's home or office. . . ." (Footnote added.) (Citations omitted.)
Furthermore, Mr. Justice Black, in Coolidge v. New Hampshire,403 U.S. 443, 509, 510, 91 S.Ct. 2022, 2060, 29 L.Ed.2d 564
(1971) and adopted by the Court in South Dakota v. Opperman, supra, at p. 373, 96 S.Ct. 3092, addressed himself to the standard of reasonableness of the Fourth Amendment as applied to the impoundment-inventory situation. He stated:
 "[T]he Fourth Amendment does not require that every search be made pursuant to a warrant. It prohibits only `unreasonable searches and seizures.' The relevant test is not the reasonableness of the opportunity to procure a warrant, but the reasonableness of the seizure under all the circumstances. The test of reasonableness cannot be fixed by per se rules; each case must be decided on its own facts."
Reviewing the relevant facts, the appellant was positively identified as the driver of the wrecked vehicle by an eyewitness to the accident. Officer Pilkington, upon orders transmitted via police radio, then conducted an inventory of the car wherein he discovered the revolver and the spent casing. After conducting the inventory, appellant and the officers waited approximately one to one and one-half hours for the wrecker to arrive. Officer Pilkington testified that it was standard procedure to inventory any vehicle used in any crime. Furthermore, he stated that the inventory conducted at the scene was the beginning of the impoundment process.
We hold that the revolver was properly admitted into evidence. The car was in police custody and had the officers left the vehicle unattended after investigating and without conducting an inventory, both the loss of appellant's valuables (if any existed) as well as any evidence could have occurred. Appellant himself testified that the wrecker arrived one to one and one-half hours after the inventory was conducted. Clearly, the inventory served the purpose it was designed to accomplish,South Dakota v. Opperman, supra, as well as preserving any evidence relevant to the investigation. The trial court therefore properly overruled the appellant's objections to introduction of the revolver into evidence. *Page 399 
 II
Appellant also contends that the trial court's oral charge concerning self-defense was erroneous by including the element of retreat. He contends the uncontradicted evidence indicated that he was in his home at the time of the shooting and under no duty to retreat. Appellant contends the duty to retreat or not is a legal issue and not an issue of fact to be submitted to the jury. After covering the other elements of self-defense, the trial court charged:
 ". . . Now, the third ground or the third element of the plea of self-defense is the matter of retreat. Further the law says that no one is excused from taking a human life, if he could have at the time retired or retreated from the combat with safety to his own person. In other words, the law favors a person being a coward under such circumstances, you might say. In other words, he has the duty on his part to retreat from the combat.
 "Now, in this case, the defendant has testified and there has really been no evidence to contradict it, and he says that this alleged killing took place in a building which was part a store and part a home. He says he was at home at the time of the alleged killing. He says he was in his own home at the time. Therefore under those circumstances and as I say, nobody has come forward to contradict that. Insofar as the retreating aspect of self-defense is concerned, he was under no duty to retreat since he was in his own home and that, as I say, is embraced of course within the plea of self-defense."
The elements of self-defense as stated by this court inMosley v. State, 22 Ala. App. 95, 97, 112 So. 811, 812, (1927) are:
 "(1) [T]hat defendant was free from fault in provoking the difficulty,
 "(2) [T]hat defendant was in imminent danger of suffering grievous bodily harm, and
 "(3) [T]hat there was open to defendant no reasonably apparent mode of escape."
The trial court, having correctly stated the law governing the plea of self-defense, removed from the jury's consideration the factual issue of retreat in the second paragraph of the charge quoted above. As stated in Usrey v. State, 54 Ala. App. 448,451, 309 So.2d 485, 488, (1975), cert. denied, 293 Ala. 776,309 So.2d 489.
 "Suffice it to say, the court would have been justified had he charged the jury that the law of retreat did not apply in the instant case because the appellant was in his own home. . . ."
In the instant case, the trial court in effect charged the jury that the retreat element was not applicable because the evidence was uncontradicted that appellant was in his own home. Furthermore, in Wilkinson, supra, at 404, wherein the identical issue was raised, we held that it is not error to "mention the ordinary rule that requires retreat" and then declare to the jury that the instant defendant owed no such duty. Reversal in the first appeal was due to the fact that the trial judge then charged that he would let the jury decide whether the appellant came within the exception to the usual retreat requirement.
Appellant contends that the trial judge again erroneously submitted the issue to the jury by stating, "Well, these things are something for you to consider." Appellant in his brief appends that statement to the end of the second paragraph of the charge quoted above, which makes it appear to refer to the "retreat" issue. However, the record shows that comment of the trial judge to be the beginning of a new paragraph referring to a different subject.
We do not know what word or words in that statement the trial judge may have emphasized. He may have said, "Well, these are something for you to consider" (emphasis supplied) meaning he was listing some additional matter for the jury's consideration. He may well have been referring to his prior charge on "retreat" as appellant contends. However, from viewing the record (the only thing we may legally consider), it appears the comment objected to was a transitional phrase leading to a *Page 400 
new subject (voluntary intoxication) and was not a reference to the subject of the prior paragraph. We will not place a strained or hypertechnical construction on the trial judge's comment at the beginning of a paragraph dealing with voluntary intoxication to construe it as a comment relating to the prior paragraph concerning the subject of retreat.
The record is all too unclear to support a reversal on the ground urged by the appellant. We likewise have searched the remainder of the record for reversible error and find none.
AFFIRMED.
All the Judges concur.
[1] See also Rayford v. State, 56 Ala. App. 394, 321 So.2d 734
(1975).